# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| KEISHA GRANT, | **Case No.:**  5:25-cv-02383-JRA |
| Plaintiff, | **PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS** |
| v. | |
| EQUIFAX INFORMATION SERVICES, LLC, | |
| Defendant. | |

Plaintiff Keisha Grant, ("Plaintiff") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., Plaintiff's acceptance of Defendant Equifax Information Services, LLC's ("Defendant") Rule 68 offer of judgment, hereby requests that the Court award Plaintiff's reasonable costs and attorneys' fees.

The total hours expended, and the hourly rates requested, are both reasonable and awardable under the applicable lodestar method. Plaintiff therefore requests an entry of an award of $9,793.35 in attorneys' fees and costs. This request is supported by the following Memorandum and attached Exhibits.

## MEMORANDUM

**I.  PLAINTIFF IS THE PREVAILING PARTY AGAINST DEFENDANT AND IS THEREFORE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES UNDER THE FCRA AND FDCPA.**

The Fair Credit Reporting Act entitles a prevailing plaintiff to an award of reasonable attorneys' fees. *See* 15 U.S.C. §§ 1681n(a)(3) and 1681o(b) (FCRA consumer-plaintiffs are entitled to "the costs of the action together with reasonable attorney's fees as determined by the court…" "in the case of any successful action to enforce any liability under" the FCRA).

On or about March 6, 2026, Defendant made an Offer of Judgment, which was accepted by Plaintiff and entitles Plaintiff to the recovery of "Plaintiff's reasonable attorneys' fees and costs incurred by her legal counsel in the above-styled action." Exhibit  A ("Offer of Judgment"). The Offer of Judgment specifies that the amount of such fees "shall be determined by the Court." [*Id.*].

**II.  PLAINTIFF'S ATTORNEYS' FEES ARE TO BE AWARDED ACCORDING TO THE LODESTAR CALCULATION, WHICH IS PRESUMED REASONABLE.**

"The first step in calculating a reasonable attorney's fee award is to determine the 'lodestar' – the product of multiplying reasonable hours expended times a reasonable hourly rate." *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 6 (11th Cir. 2014) (citing Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999)); See also *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). ("…[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

Applying the lodestar factors to Plaintiff's request for attorneys' fees, the following is hereby submitted to the Court:

(1) Between 2025 and 2026, attorney Landon Maxwell billed 16.6 hours at $400 per hour.

(2) Between 2025 and 2026, attorney Adam Hubbi billed 3.5 hours at $400 per hour.

(3) Between 2025 and 2026, attorney David Chami billed 0.1 hours at $750 per hour.

(4) Between 2025 and 2026, supporting staff billed 7.9 hours at $150 per hour.

In all, between 2025 and 2026, Plaintiff's counsel expended a total of 28.1 hours accomplishing legal tasks directly related to Defendant for a total amount billed are supported by the exhibits, declarations, and attachments filed concurrently herewith.

**A. The Requested Fees Reflect The Prevailing Market Rates.**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth., City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson,* 465 U.S. 886, 895-96 n.11, 104 S.Ct. 1541, 1547 n.11, 79 L.Ed.2d 891 (1984)); *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). "[T]he relevant market for the hourly rate to be used in the computation of the lodestar figure […] is that of the place where the case is filed." *Cullens v. Georgia Dept. of Transp,* 29 F.3d 1489, 1494 (11th Cir. 1994).

Courts throughout the country regularly use independent surveys into charged fee rates to determine an appropriate and reasonable hourly rate. To that end, Plaintiff's charged hourly rates are commensurate with those rates customarily charged in Ohio state and federal litigation of consumer law issues as shown by the United States Consumer Law Attorney Fee Survey Report (2017-2018). *See* Exhibit B ("Fee Survey").[1] The charged and recovered fee rates for Ohio

---

[1] This Fee Survey and its historical iterations have been regularly used by federal and state courts to ascertain a reasonable hourly rate under the lodestar method for over a decade. *See* Fee Survey, pgs. 510-528 (citing cases expressly relying upon the Fee Survey to determine a lodestar hourly rate) (Plaintiff notes that the cases cited to do not represent an exhaustive list of authority on the issue.).

litigators handling credit rights cases in 2017-2018 averaged between $250/hr (25% median) and $563/hr (95% median), depending on the skill, experience, and reputation of the litigator. *Id.,* at pg. 143.

As noted, the Fee Survey was compiled using data gathered in 2017 and 2018. The calculation of subsequent inflation is necessary toa correctly determine the rate "prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n. 11; *See also Holloway v. City of Orlando*, No. 6:15-cv-129-Orl-40GJK, 2017 U.S. Dist. LEXIS 12222, at *8 (M.D. Fla. Jan. 30, 2017) ("inflationary considerations dictate that [counsel] should recover more…") (citing *Norman*, 836 F.2d at 1302 (holding that courts should account for inflation in calculating an award of attorney's fees and should "generally award compensation at current rates rather than at historic rates.")); *Accord Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("We also note that in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."); *Bempah v. Midland Credit Mgmt.*, No. 22-cv-748, 2023 U.S. Dist. LEXIS 1751, at *6 (N.D. Ill. Jan. 5, 2023) ("The court notes, however, that Midland's position appears to ignore inflation…") (Utilizing the U.S. Bureau of Labor Statistics to properly adjust a historical rate).

If the U.S. Bureau of Labor CPI Inflation Calculator is utilized, the charged and recovered fee rates for Ohio litigators handling credit right cases noted above would average between

$341.77 (25% median) and $769.65 (95% median) in April 2026 (the latest month with published inflation data).[2]

Under this calculation of the prevailing rates for attorneys of similar skill and practice area, the hourly rate identified and charged for the attorney representing Plaintiff is reasonable.

1. Attorney Landon Maxwell

Landon Maxwell has been a practicing attorney for nearly three years, the entirety of which has been devoted to federal consumer protection litigation. Since August 2023, upon admission to the bar, Mr. Maxwell has worked continuously for Consumer Justice Law Firm as an associate attorney. During that time, Mr. Maxwell has gained extensive experience in federal litigation, both in federal district court, and in bankruptcy court. Mr. Maxwell is currently licensed to practice law in the Arizona Supreme Court, the United States District Court for the District of Arizona, the United States District Court for the Northern District of Ohio, the United States District Court for the Southern District of Texas, the United States District Court for the Eastern District of Texas, the United States District Court for the Western District of Texas, the United States District Court for the District of Colorado, the United States District Court for the Northern District of Illinois, the United States District Court for the Eastern District of Michigan, the United States District Court for the Western District of Michigan.

The rates requested for Mr. Maxwell are reasonable considering the fees charged by other attorneys of his skill and experience. *See* Fee Survey, pg. 143 (Experience Variable Table) (finding

---

[2] These calculations were made utilizing the CPI Inflation Calculator at https://www.bls.gov/data/inflation_calculator.htm. The rates have been rounded to the nearest whole number.

average hourly rate for attorney with 1-3 years of experience practicing consumer law in 2017—2018 to have been $244, or $335 if adjusted for inflation).

2. Attorney Adam Hubbi

Adam Hubbi has been a practicing attorney for nearly three years, the entirety of which has been devoted to federal consumer protection litigation. Since June 2021, upon admission to the bar, Mr. Hubbi has worked continuously for Consumer Justice Law Firm as an associate attorney. During that time, Mr. Hubbi has gained extensive experience in federal litigation, both in federal district court, and in bankruptcy court. Mr. Hubbi is currently licensed to practice law in the California Supreme Court, the United States District Court for the Northern District of California, the United States District Court for the Southern District of California, the United States District Court for the Central District of California, the United States District Court for the Eastern District of California, the United States District Court for the Northern District of Ohio, the United States District Court for the Northern District of Illinois, the United States District Court for the Eastern District of Michigan, the United States District Court for the Western District of Michigan, and the United States District Court for the Eastern District of New York.

The rates requested for Mr. Hubbi are reasonable considering the fees charged by other attorneys of his skill and experience. *See* Fee Survey, pg. 143 (Experience Variable Table) (finding average hourly rate for attorney with 3-5 years of experience practicing consumer law in 2017—2018 to have been $258, or $356 if adjusted for inflation).

**B. The *Johnson* Factors Weigh In Favor Of Confirming The Hourly Rates Requested Under The Prevailing Market Rates.**

"After counsel proposes an hourly rate based on the prevailing market rate in the community, courts may consider the Johnson factors to determine if the proposed rate accurately

reflects the true worth of counsel." *Ne. Eng'rs Fed. Credit Union v. Home Depot, Inc. (In re Home Depot Inc.)*, 931 F.3d 1065, 1091 (11th Cir. 2019) (citing *Norman*, 836 F.2d at 1299–1300 ("We still believe that at least some of the Johnson factors have utility in establishing the hourly rate. In evaluating the comparability of the market rates being attested to, the district court may wish to consider any of the Johnson factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court.")) (referring to *Johnson v. Georgia Highway Express, Inc.* (488 F.2d 714 (5th Cir. 1974)).

The twelve *Johnson* factors are: (1) the time and labor required; (2)a the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) he time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Plaintiff addresses each of these factors below.

### 1.  The Time And Labor Required Of Counsel

Plaintiff's "counsel is not required to record in great detail how each minute of his time was expended, […] [however] counsel should at least 'identify the general subject matter of his time expenditures.'" *National Ass'n for the Advancement of Colored People v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987) (quoting *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12.). Here, Plaintiff's counsel has provided documentation and explanation of all time expended

to prepare for and prove Plaintiff's claims, including, *inter alia,* pre-litigation investigation of the facts and circumstances giving rise to the causes of action identified in the Complaint, preparing and filing a lawsuit on behalf of Plaintiff, performing necessary tasks as outlined in the Court's scheduling order including preparing a Joint Status Report, drafting written discovery requests, and conducting settlement correspondence with Defendant's counsel. All time entries are laid out in the accompanying Declarations and Exhibits.

2. The Novelty And Difficulty Of The Questions Presented

The Fair Credit Reporting Act presents its own set of considerations and challenges common to all FCRA cases which make litigation difficult, including (but certainly not limited to) (1) the average consumer's inability to pay the fees and costs associated with litigating against a large, national corporation (such as Defendant), forcing attorneys such as the undersigned to bear those costs and fees up front with no promise of payment for services rendered; (2) the fact that nearly all relevant discovery lies with the corporate defendant being sued;[3] (3) that damages inherent to FCRA claims are often difficult to quantify, consisting largely of harm to the consumer's reputation and emotional and mental distress damages; (4) that it is difficult to prove the mental culpability of a faceless corporation (a requirement to prove liability under §§ 1681n and 1681o), often requiring hours of analyzing and weighing the efficacy, purpose, and history of implemented procedures; and (5) the requirement that a competent litigator maintain an up-to-date knowledge of the vast body of federal jurisprudence applicable to FCRA cases, which continues to shift on a surprisingly constant basis.

---

[3] FCRA cases present the classic situation where, because of the nature of the corporate-consumer relationship, the relevant "facts are peculiarly within the possession and control of the defendant." *GSAA Home Equity Tr. 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A.*, 133 F. Supp. 3d 1203, 1221 (D.S.D. 2015) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010)).

The novelty and difficulty of maintaining an action under the FCRA strongly weigh in favor of granting Plaintiff's requested lodestar fees in their entirety.

3.  The Skills Requisite To Perform The Legal Service Properly

Preparing a consumer protection case, particularly one that involves violations of the FCRA, requires diligence and a thorough knowledge of the germane facts and laws at issue. As noted above, the full litigation of an FCRA case presents a set of unique challenges and requirements, which demand a specific set of skills and requisite experience to overcome and represent an FCRA consumer-client. This is especially true where, as here, the institutional and resource advantage lies solely with the defense, a large collection institution with the ability to hire experienced and skilled litigators.

The level of skill required to litigate FCRA cases weighs in favor of granting Plaintiff's requested lodestar fees in their entirety.

4.  The Preclusion Of Other Employment By The Attorney Due To Acceptance Of The Case

As discussed above, a fundamental characteristic of FCRA consumer litigation is the consumer-plaintiff's inability to pay the fees and costs, requiring an FCRA plaintiffs' lawyer to bear those expenses up front on the expectation of being repaid by the FCRA's fee-shifting provision. This necessarily means that FCRA plaintiffs' attorneys, such as the undersigned, are inherently financially limited in the number of cases, and the types of other cases, that they may accept while litigating under the FCRA. With time and costs expended on cases which do not pay via billable hours, the FCRA attorney is precluded from accepting other cases/employment which would include regular cash flow.

The inherently preclusive effect of FCRA cases on an attorney's ability to accept additional employment weighs in favor of granting Plaintiff's requested lodestar fees in their entirety.

5.   The Customary Fee Charged In Matters Of The Type Involved

Plaintiff's requested fee rates are supported by the Fee Survey, which – as described at length above – provides independent evidence of the "customary fee" charged by credit rights and consumer protection attorneys in representing consumers with claims arising under the various federal consumer protection statutes.

6.   Whether The Fee Is Fixed Or Contingent

Due to the nature of the FCRA's fee-shifting provision, the undersigned's fee was contingent upon the outcome of this case, and therefore the undersigned undertook a financial risk in representing Plaintiff, who could not otherwise have afforded legal representation. This is – after all – the entire point of the FCRA's fee-shifting provision. However, this factor is generally analyzed in reviewing an attorney's request for an upward adjustment of the lodestar amount. As the Eleventh Circuit has noted, "the 'contingency-fee factor is simply that, a factor,' […] and its presence in a given case would not necessarily require an adjustment in order to produce a reasonable fee; the lodestar amount itself may suffice." *Kay v. Apfel*, 176 F.3d 1322, 1327 (11th Cir. 1999) (overruled on other grounds) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)). Plaintiff is not seeking an upward adjustment of the lodestar award, and thus this factor does not weigh strongly in the Court's analysis.

7.   Time Limitations Imposed By The Client Or The Circumstances

As an FCRA case, this action did not involve any particular time limitation which would have impacted the overall litigation and thus this factor does not weigh strongly in the Court's analysis.

8.   The Amount Involved And The Results Obtained

This case was settled for, *inter alia*, a monetary award of $10,000, well above the maximum $1,000 award of actual damages for willful violations under § 1681n, due to the availability of full actual damages under § 1681o and punitive damages under § 1681n. However, it has long been understood in the Federal judiciary that awards under fee-shifting statutes are not to be limited by considerations relating to the amount of recovery. Because the prevailing plaintiff vindicates important public interests, the value of the case cannot be measured solely by the amount of damages that the plaintiff suffered in his individual capacity. *See Riverside v. Rivera,* 477 U.S. 561, 575 (1968). In discussing the fee-shifting provisions of civil rights statutes, the Supreme Court held that:

> Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature*."

*Id.* (quoting S. Rep. No. 94-1011, p. 6 (1976) and adding emphasis). Courts throughout the country have followed this principle when awarding attorneys' fees under fee-shifting statutes that advance *any* kind of public interest, not only civil rights. *See, generally, Millea v. Metro–North R.R. Co.,* 658 F.3d 154, 169 (2d Cir. 2011)("for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. **The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery**.") (emphasis added); *Student Pub. Interest Research Grp. Of N.J. v. AT&T Bell Labs*., 842 F.2d 1436, 1449 (3d Cir. 1988) (noting that "Congress

provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies" and that fee awards based upon "competitive rates" help "assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.") *Wallace v. Collection Info. Bureau, Inc.*, No. 07-80941-CIV, 2008 WL 11470907, at *11 (S.D. Fla. Sept. 8, 2008) ("Courts have repeatedly held that proportionality between a consumer's recovery and the attorney's fees to be paid is not required in every action brought under the Consumer Credit Protection Act statutes such as the Fair Credit Reporting Act") (internal quotation marks and citations omitted), report and recommendation adopted, No. 07-80941-CIV, 2008 WL 11470906 (S.D. Fla. Oct. 9, 2008); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 652 (4th Cir. 2002) ("Fees should be high enough to encourage attorneys to take cases without awarding windfalls.")*; Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 71-75 (3d Cir. 1989) (upholding a jury's finding of $875.00 in damages would support a reasonable counsel fee and cost petition for $64,964.11) (standing for the propositions that attorney fee awards under fee-shifting statutes often bear little or no relation to the actual or statutory damages recovered under those statutes).

Numerous courts have applied this principle to approve attorneys' fee awards that typically exceed the amount of recovery by a substantial margin. *See, e.g., Palmer v. Futtner,* No. 3:12cv34(SRUY), 2014 WL 943107 (D. Conn. Mar. 11, 2014) (awarding $25,728.50 in attorneys' fees on a $500 recovery); *Cabala v. Morris,* Civil No. 3:09cv651, 2012 WL 3656364 (D. Conn. Aug 24, 2012) (Over $32,000 in fees and costs awarded on $1,001 recovery), *aff'd,* 736 F.3d 226 (2d Cir. 2013).

The amount of Plaintiff's recovery is relevant only in that it reflects Plaintiff's success in this action. Therefore, this factor does not weigh strongly in the Court's analysis.

9. The Experience, Reputation And Ability Of Counsel

The experience, reputation, and ability of Plaintiff's counsel has already been addressed at Section II(A), above. The fees requested in the lodestar calculation are commensurate with those generally charged by attorneys of similar experience, reputation, and ability who litigate similar types of cases in this State.

10. The "Undesirability" Of The Case

As discussed above, consumers (like Plaintiff) are typically unable to pay attorneys' fees and costs. Because of this, such cases are unattractive to most attorneys. Congress understood this and therefore codified fee shifting provisions in the FCRA, allowing a consumer's attorneys' fees and costs to be paid by the corporate defendant to an FCRA lawsuit. However, this fee-shifting only occurs if the attorney is successful. This structure, while effective in incentivizing certain attorneys to take otherwise payless work, still results in FCRA cases such as this one being less desirable than other, billable cases.

The inherent "undesirability" of FCRA cases weighs heavily in favor of granting Plaintiff's requested lodestar fees in their entirety.

11. The Nature And Length Of The Professional Relationship Between The Attorney And Client

Plaintiff did not have a professional relationship with the undersigned prior to seeking representation in this matter. This type of relationship stands in contrast to an established client relationship where "regular" clients may receive discounted fees. *See Johnson*, 488 F.2d at 719 ("A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. The Court may appropriately consider this factor in determining the amount that would be reasonable."). Thus, this factor does not weigh in favor of a reduction in Plaintiff's requested lodestar fees, as it would in the alternative.

12. Awards In Similar Cases

Most FCRA cases settle well in advance of trial, without the entry of a fee award. Thus, it is difficult to source examples of fee awards from "similar cases." Further, most cases involving comparable issues are many years old at this point. *See Camacho*, 523 F.3d at 981 ("We also note that in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services.").

Regardless, Plaintiff has attempted to gather and organize a sampling of historic examples of fee awards entered in consumer protection cases throughout the country.

- *Shelago v. Marshall Ziolkowski Enter. Ltd.*, 2009 WL 1097534 (D. Ariz. 2009) (Awarding $400/hr for a claim brought under the FDCPA, filed in 2007 and awarded in 2009).

- *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2018 U.S. Dist. LEXIS 130505 (N.D. Ill. Aug. 3, 2018) (awarding hourly rates ranging from $500 to $725 in Magnuson-Moss Warranty Act class action in 2018) (relying on the Fee Survey to establish applicable hourly rates).

- *Doyle v. Midland Credit Management, Inc.*, 2017 U.S. Dist. LEXIS 215290, 2017 WL 6944789 (D. NJ, Dec. 1, 2017) (awarding $467/hr in FDCPA and Credit Rights case in 2017)

- *Heling v. Creditors Collection Serv.*, 2017 U.S. Dist. LEXIS 89693, 2017 WL 2539785 (E.D. Wisc., Jun. 12, 2017) (awarding $450/hr in FDCPA and Credit Rights case in 2017).

Ascribing the appropriate weight to such older awards given in similar cases, and specifically to awards entered in consumer protection cases involving Plaintiff's team of attorneys, this prong weighs in favor of granting Plaintiff's requested lodestar fees.

## III. PLAINTIRFF IS ENTITLED TO RECOVER FEES EXPENDED IN THE PREPARATION OF THIS MOTION

"Without question, time expended on litigation a statutory attorney's fee petition is recoverable." *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1268 (S.D. Ala. 2013) (citing *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir.1990) ("It is well settled that time expended litigating attorney fees is fully compensable.")). "This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." *DVI Receivables XIV, LLC v. Rosenberg*, 500 B.R. 174, 186 (S.D. Fla. 2013) (internal quotation marks omitted) (quoting *In re S. California Sunbelt Developers, Inc.*, 608 F.3d 456, 463 (9th Cir. 2010)).

Thus, Plaintiff has included time spent to prepare this fee petition in the total hours requested, and to the extent that this Motion requires additional time, including a reply brief, oral argument, or further fee litigation, Plaintiff respectfully reserves the right to supplement his request to include fees incurred for the same.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff should be awarded reasonable attorneys' fees in the amount of $9,793.35, for the prosecution of a successful action under the Fair Credit Reporting Act.

//

RESPECTFULLY SUBMITTED this 25th day of June 2026,

> BY: */s/ Landon T. Maxwell*
> Landon T. Maxwell, AZ #038439
> Consumer Justice Law Firm PLC
> 8095 N 85th Way
> Scottsdale, AZ 85258
> T: (480) 626-1975
> F: (480) 613-7733
> E: lmaxwell@consumerjustice.com
> Attorneys for Plaintiff
>
> *Attorneys for Plaintiff*
> *Keisha Grant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

*/s/ Mari Cervantes*